UNITED STATES of America

v.

Daryl SINGLETERRY, Defendant.

Crim. No. 93-3-P-C.

United States District Court,
D. Maine.

May 5, 1993.

Nicholas M. Gess, Asst. U.S. Atty., Portland, ME, for U.S.

Stephen H. MacKenzie, Portland, ME, for defendant.

MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS AND ON THE GOVERNMENT'S MOTION FOR A PROCEDURAL ORDER

GENE CARTER, Chief Judge.

### I.

Defendant has been indicted for possession with intent to distribute in excess of five grams of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and for aiding an abetting such possession in violation of 18 U.S.C. § 2. In Count II of the indictment Defendant is charged with using or carrying a firearm during and in connection with a drug trafficking crime in violation of 18 U.S.C. § 924(c). He has moved to suppress physical evidence seized during a search of his motel room and a vehicle with license plate JAMEE, executed on January 15, 1993, pursuant to a warrant. (Docket No. 8). Defendant also has moved to suppress as involuntary a statement made by him during a

custodial interrogation following his arrest. *Id.*

The record shows that the Kittery, Maine Police Department received a tip from a citizen informer that three individuals staying at the Days Inn in Kittery appeared to be engaged in activities related to drug trafficking. Detective Sergeant Ronald Avery, the officer who obtained the warrant, went to the motel where he learned that the subject individuals had registered on January 12, 1993, in the name of Jamee J. Landrey, 449 Middle St., Portsmouth, N.H. and that their automobile bore the New Hampshire license plate JAMEE. Det. Sgt. Avery learned that these individuals made at least 82 telephone calls from the room between January 13 at 7:54 p.m. and January 14 at 8:00 a.m. These calls were logged by automatic equipment at the motel's registration desk, and printouts of the logged data were provided to Det. Sgt. Avery. Det. Sgt. Avery's investigation proceeded on the basis of the information gleaned from the motel's telephone records, and he used the investigation results as the basis for seeking the warrant challenged here.

## II.

■ Defendant argues that Avery conducted an illegal "warrantless search" of his hotel phone records, which tainted the subsequent search of the hotel room and automobile pursuant to the warrant. The Fourth Amendment to the United States Constitution protects people against unreasonable searches and seizures and requires that warrants to search be based upon probable cause. As the Supreme court has stated: "[A]pplication of the Fourth Amendment depends upon whether the person invoking its protection can claim a 'justifiable,' a 'reasonable,' or a 'legitimate expectation of privacy' that has been invaded by government action." *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979). This inquiry has two parts: "whether the

individual, by his conduct, has 'exhibited an actual (subjective) expectation of privacy,'" and "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.'" *Id.* (*quoting Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967)). Applying this test to the circumstances of this case, it is plain that Defendant could have no reasonable expectation of privacy in the numbers dialed from his hotel room. Therefore, no warrant was required for police officers to examine Defendant's hotel phone records.[1]

In *Smith v. Maryland,* 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the Supreme Court ruled that a pen register recording telephone numbers called by Defendant's home telephone was not a search within the meaning of the Fourth Amendment. Applying the two-part *Katz* test, the Court first determined that Defendant had no subjective expectation of privacy in the telephone numbers he dialed:

> Telephone users ... typically know that they must convey numerical information to the phone company; that the phone company has facilities for recording this information; and that the phone company does in fact record this information for a variety of legitimate business purposes. Although subjective expectations cannot be scientifically gauged, it is too much to believe that the telephone subscribers, under these circumstances, harbor any general expectation that the numbers they dial will remain secret.

*Id.* 442 U.S. at 742, 99 S.Ct. at 2581. Since telephone users have, in general, no subjective expectation of privacy in the numbers they call, Defendant must make a factually supported showing that he had such a subjective and reasonable expectation in the specific circumstances of this case.

---

1. The Government argues that Defendant has no standing to seek to suppress the motel's phone records. The Court is satisfied that lack of standing can serve as an alternative basis for the decision here. *See United States v. Willis,* 759 F.2d 1486, 1498 (11th Cir.1985) (Defendant lacks standing to challenge investigating officers' examination of motel records.). To effect maximum judicial economy by providing a resolution of all issues at the trial court level, the Court has passed an opportunity to make a definitive ruling on the basis of Defendant's standing because of its resolution of the merits of Defendant's claim.

■ In that regard Defendant argues that hotel phone records are different from "general" phone records because they are "ordinarily produced by machine and read by, at the most, a single clerk, and then only to tabulate the cost figures." Defendant's Memorandum of Law in Support of His Motion to Suppress Evidence, at 4. The Court sees no valid distinction. Once a person makes a call, he harbors no expectation that the numbers dialed will remain secret. *Smith v. Maryland*, 442 U.S. at 742, 99 S.Ct. at 2581. Hotel telephone users not only know that the phone company will necessarily know the numbers they dial, but also that the hotel will know them because the phone call must go through the hotel desk or switchboard and be recorded for legitimate billing purposes. As the Court in *Smith v. Maryland* explicitly noted, the site from which a call is made is immaterial to the analysis of whether a caller has a subjective expectation of privacy in the numbers he or she calls. *Id.* at 743, 99 S.Ct. at 2582. Defendant, therefore, on this record could have no subjective expectation of privacy in the numbers he dialed.

■ Even if an individual were found to have a subjective expectation of privacy, before Fourth Amendment protection is afforded, a court must determine whether that expectation is reasonable, that is, whether "the individual's expectation, viewed objectively, is 'justifiable' under the circumstances." *Id. (quoting Katz*, 389 U.S. at 351, 88 S.Ct. at 511). Applying this "objective" prong of the *Katz* analysis in *Smith v. Maryland*, the Supreme Court found that even if the petitioner did harbor some subjective expectation that the telephone numbers he dialed would remain private, it was not a reasonable expectation because

a person has no legitimate expectation of privacy in information he voluntarily turns over to third persons.... When he used his phone, petitioner voluntarily conveyed numerical information to the telephone company and "exposed" that information to its equipment in the ordinary course of business. In so doing, petitioner assumed the risk that the company would reveal to police the numbers he dialed. The switch-

ing equipment that processed those numbers is merely the modern counterpart of the operator who, in an earlier day, personally completed calls for the subscriber.

*Id.* 442 U.S. at 743–44, 99 S.Ct. at 2582. Obviously, this analysis is equally applicable to Defendant's voluntary exposure of phone numbers to both the hotel's and telephone company's equipment in this case. Thus, even if Defendant had harbored a subjective expectation of privacy in the numbers he dialed at the Kittery Days Inn, it is not a reasonable or justifiable expectation given the circumstances. Therefore, Det. Sgt. Avery's warrantless inspection of the Days Inn phone records did not violate any Fourth Amendment right of Defendant.

### III.

■ Defendant also argues that the affidavit submitted by Det. Sgt. Avery in support of the application for a warrant failed to establish probable cause to search the hotel room. The affidavit recites Avery's knowledge that the persons in Room 225 at the Days Inn in Kittery had made telephone calls to an address in Lawrence, Massachusetts, known to be that of a crack cocaine dealer. Investigation had shown that the woman to whom the motel room was rented was known as the girlfriend of Recardo Newell, an associate of Daryl Singleterry. Avery's affidavit, supported by affidavits of New Hampshire police officers, shows that Singleterry had sold drugs to police in a controlled buy at the address given for the woman in whose name the room was registered. Avery also averred, based on information in the other affidavits, that Singleterry had been arrested both in New Hampshire and New York for trafficking in crack cocaine.

An officer of the Dover, New Hampshire police informed Avery that Newell and Singleterry were engaged in an ongoing criminal enterprise for the sale and distribution of crack cocaine. Their method of operation, recounted to Avery by the Dover officer, was: (1) to move into a motel room for a couple of days; (2) to make numerous telephone calls to their suppliers and customers; (3) to arrange to obtain the cocaine, and then pick it up, using the vehicle of Jamee Lan-

dry; and (4) to sell the cocaine out of the motel room. Avery also averred that the physical descriptions of Newell and Singleterry matched those provided by the citizen informant of the two men occupying room 225 at the Days Inn in Kittery.

Avery's affidavit shows that he is a twelve year veteran of the Kittery Police Department with special training and extensive experience in the field of narcotics investigation. On the basis of his experience, he expects drug dealers to have on hand materials for weighing and packaging drugs, cash, and records of sales.

 As the Supreme Court has stated,

[t]he task of the [warrant] issuing magistrate is to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In this case given the facts before him, the issuing judge had a substantial basis for finding probable cause to believe that contraband and evidence of a crime would be found in Room 225 of the Days Inn in Kittery, Maine and in the vehicle with New Hampshire license plate JAMEE. Since the evidence Defendant seeks to suppress was found in a search executed pursuant to a valid warrant, and he has laid no basis under *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to challenge the truthfulness of the factual allegations made in the affidavit supporting the warrant, the Defendant's *motion to suppress physical evidence* will be denied without an evidentiary hearing.[2]

## IV.

Defendant has also moved to suppress statements made by him in the course of custodial investigation after the search of Room 225.[3] He asserts that his statements were involuntary. The Court must determine whether, in the totality of the circumstances, Defendant's statement was the product of undue pressure by the interrogating officers which Defendant could not resist. *Colorado v. Connelly,* 479 U.S. 157, 170, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473 (1986). A hearing on Defendant's motion has been set for May 7, 1993. Because no evidentiary matters must be resolved on the motion to suppress physical evidence, the hearing will be limited to testimony pertaining to the voluntariness of the statements Defendant seeks to suppress.

Accordingly, it is *ORDERED* that Defendant's Motion to Suppress Evidence seized pursuant to a search warrant be, and it is hereby *DENIED.* The Court will hold a hearing limited to the issue of the voluntariness of the statements Defendant seeks to suppress on May 7, 1993, at 9 a.m.

So *ORDERED.*

---

**2.** Defendant suggests that his statements made during custodial interrogation should also be suppressed as "a tainted byproduct of the illegal search warrant." *Defendant's Memorandum,* at 6–7. Since the search warrant was not faulty, this argument must be rejected.

**3.** The Government argues that Defendant has committed a procedural default by not submitting a memorandum in support of his motion to suppress his statements. Defendant's motion, affidavit, and memorandum all make plain that he is seeking to suppress his statements. The Government's argument, based on infelicitous phrasing in Defendant's memorandum, is without merit.